Slip Op. 11- 112

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
--------------------------------------------------------x
                                              :
JINXIANG HEJIA CO., LTD.,                     :
                                              :
        Plaintiff,                            :
                                              :
        v.                                    :   Before: Judith M. Barzilay, Senior Judge
                                              :   Court No. 09-00471
UNITED STATES,                                :
                                              :
        Defendant,                            :
                                              :
        and                                   :
                                              :
FRESH GARLIC PRODUCERS                        :
ASSOCIATION, CHRISTOPHER RANCH                :
L.L.C., THE GARLIC COMPANY,                   :
VALLEY GARLIC, AND VESSEY AND                 :
COMPANY, INC.,                                :
                                              :
        Defendant-Intervenors.                :
                                              :
--------------------------------------------------------x
```

## OPINION & ORDER

[The court sustains in part and remands in part the redetermination of the U.S. Department of Commerce.]

Dated: September 7, 2011

*deKieffer & Horgan* (*John J. Kenkel*, *Gregory J. Menegaz*, and *J. Kevin Horgan*) for Plaintiff Jinxiang Hejia Co., Ltd.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, *Richard P. Schroeder*, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *George Kivork*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

*Kelley Drye & Warren LLP* (*Michael J. Coursey* and *John M. Herrmann*), for Defendant-Intervenors Fresh Garlic Producers Association, Christopher Ranch L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc.

Barzilay, Senior Judge:  Plaintiff Jinxiang Hejia Co., Ltd. ("Plaintiff" or "Hejia") contests the remand determination by the U.S. Department of Commerce ("Commerce" or "the Department") concerning a new shipper review for single-clove garlic from the People's Republic of China.  *See Final Results of Redetermination Pursuant to Court Order*, J.A. Tab 8 (Dep't of Commerce Jan. 14, 2011) ("*Redetermination*").  Plaintiff argues that Commerce's calculation of normal value for the subject merchandise is not supported by substantial evidence.  Plaintiff also argues that Commerce unreasonably converted the terms of one of the sales offers on record such that the offer did not reliably serve as surrogate value data and that Commerce relied on an unsupported weighted-average of surrogate value data.  The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).  For the reasons set forth below, the court sustains Commerce's determination with regard to the conversion of the sales offer, but remands for further consideration the particular weighted-average of surrogate value data.

## I. Background

In July 2008, Commerce initiated new shipper reviews for six producers and exporters of fresh garlic from the People's Republic of China.  *See Fresh Garlic from the People's Republic of China*, 73 Fed. Reg. 38,979 (Dep't of Commerce July 8, 2008) (initiation of new shipper reviews).  Commerce included among these a review of Hejia's one-time sale of single-clove garlic made during the period of review spanning November 1, 2007, to June 9, 2008. *Redetermination* at 1.  Based on information provided by Hejia, the Department determined that single-clove garlic differs significantly from the more common Grade A and Super Grade A

multi-clove garlic exported by the other producers included in the new shipper reviews.[1]  *New Shipper Review of Fresh Garlic from the People's Republic of China*, J.A. Tab 6 at 3 (Dep't of Commerce Apr. 27, 2009) ("*Preliminary Analysis Mem.*").  As a result, Commerce concluded that the factors of production data on record for multi-clove garlic, which Commerce used to calculate a surrogate value for multi-clove garlic from China, would not yield an accurate surrogate value for single-clove garlic.  *See Fresh Garlic From the People's Republic of China*, 74 Fed. Reg. 20,452, 20,457 (Dep't of Commerce May 4, 2009) ("*Preliminary Results*").

To compensate for this deficiency in the record, Commerce initiated a search for surrogate value data for this distinct variety of garlic and selected India as an appropriate surrogate country.  *Redetermination* at 2; *Preliminary Analysis Mem.* at 2.  Commerce's search yielded limited data regarding the price of single-clove garlic in India.  *See Redetermination* at 20 ("Despite extensive research during the administrative review, . . . we were able to find only limited surrogate value information for single-clove garlic.").  In fact, Commerce found only a single price quote[2] for comparable garlic, posted by the Indian exporter Sundaram Overseas Operations ("SOO"), *Redetermination* at 2; *Preliminary Results*, 74 Fed. Reg. at 20,457, for Himalayan pearl garlic, which the Department determined was "physically similar to the product

----

[1]  While single-clove garlic is physically dissimilar from the multi-clove variety, both types of garlic are properly entered under heading 0703.20.0010 of the Harmonized Tariff Schedule of the United States.  *Issues and Decision Memorandum for the Final Results of the New Shipper Reviews and Rescission, In Part, of the New Shipper Reviews*, J.A. Tab 2 at 4 (Dep't of Commerce Sept. 24, 2009).

[2]  Commerce uses the terms "sales offers" and "price quotes" to refer to Free on Board offers for single-clove garlic, not directed to a specified buyer and posted on publicly accessible websites.  *See generally Redetermination*.

sold by Hejia," *Issues and Decision Memorandum for the Final Results of the New Shipper Reviews and Rescission, In Part, of the New Shipper Reviews*, J.A. Tab 2 at 17-18 (Dep't of Commerce Sept. 24, 2009) ("*Issues and Decision Memorandum*").  Originally posted on January 17, 2009, on a third-party website, the SOO offer was for garlic at 20 cents per unit.  *Preliminary Analysis Mem.* Ex. IV.  The offer did not, however, specify the unit of sale.  *See Preliminary Analysis Mem.* Ex. IV.  On April 20, 2009, an official from the Department sent an email to SOO requesting additional information about its offer and product, seeking in particular to clarify the terms of the offer and obtain additional pricing information for Indian-grown garlic.  *Preliminary Analysis Mem.* Ex. V.  Commerce did not receive a reply.  *Redetermination* at 3.

On May 4, 2009, Commerce issued the preliminary results of its administrative review. *See Preliminary Results*, 74 Fed. Reg. at 20,452.  Because no interested party had submitted at that stage any data regarding the value of single-clove garlic, Commerce concluded that the SOO offer was the "best available information" from which to derive normal value.  *Redetermination* at 2-3.  It therefore endeavored to convert the terms of the SOO offer to a price per kilogram such that the offer could serve as a surrogate value for single-clove garlic.  *Redetermination* at 3. Additionally, for purposes of the *Preliminary Results*, the Department assumed that SOO was a trading company, as opposed to a manufacturer, and adjusted the offer price by deducting profit, overhead, and general and administrative expenses.  *Redetermination* at 3.  In the *Preliminary Results*, Commerce found a weighted-average dumping margin for Hejia of 70.38 percent and requested that the parties to the administrative proceedings submit "factual information regarding the appropriate surrogate value to use in calculating [normal value] for Hejia for purposes of the final results of review."  *Preliminary Results*, 74 Fed. Reg. at 20,457-58.

On May 19, 2009, Hejia timely submitted four publicly available sales offers from

separate Indian[3] suppliers of single-clove garlic to serve as surrogate value information.

*Redetermination* at 3-4.  The four offers Hejia submitted price single-clove garlic at $1.15 per

kilogram, $1.18 per kilogram, $1.18 per kilogram, and $1.20 per kilogram, respectively.

*Redetermination* at 4, 11.  Like the SOO offer Commerce placed on the record, these four sales

offers are not contemporaneous with the period of review.  *Issues and Decision Memorandum* at

18.  The website on which three of the offers were posted labeled the offers as "New Arrivals" at

the time of submission, while the fourth offer explicitly lists its posting date as May 18, 2009.

*Redetermination* at 4.  The four offers were also for Himalayan pearl garlic.  *Issues and Decision*

*Memorandum* at 18.

On October 2, 2009, Commerce issued its final results for the new shipper review.  *See*

*Fresh Garlic from the People's Republic of China*, 74 Fed. Reg. 50,952 (Dep't of Commerce

Oct. 2, 2009) ("*Final Results*").  In the *Final Results*, Commerce amended its previous

determination regarding the level of trade at which SOO operates based on a description of SOO

on the company's website.  *Issues and Decision Memorandum* at 9.  Commerce concluded that

SOO was a manufacturer and exporter of garlic, as opposed to a trading company, and

determined that it would be inappropriate to deduct profit, overhead, and general and

administrative expenses from the offer price.  *Issues and Decision Memorandum* at 19.  For

---

[3]  Commerce contends that "there is some question as to whether [one of the Hejia-submitted sales offers for single-clove garlic] is from a company located in India or Nepal, and whether the garlic was actually of Indian or Nepalese origin."  *Redetermination* at 4 n.1.  While the record evidence supports Commerce's concern, J.A. Tab 4 Ex. 3; J.A. Conf. Tab 7 Ex. II, this issue does not impact the court's decision as Commerce did not rely on this issue in justifying its weighted-average methodology.

reasons not discussed in the *Issues and Decision Memorandum*, Commerce resolved to treat the

four offers as a single source of surrogate value data, as opposed to four sources, and determined

that this single source and the SOO offer "are equally usable and equally represent the best

available information on the record." *Issues and Decision Memorandum* at 18-19.  In calculating

normal value, therefore, Commerce took the simple average of (1) the SOO sales offer and (2) a

simple average of the four sales offers Hejia placed on the record.[4] *Issues and Decision

Memorandum* at 19.  This calculation resulted in a revised weighted-average dumping margin of

15.37 percent.  *Final Results*, 74 Fed. Reg. at 50,954.

Commerce also concluded in the *Final Results* that Hejia's one-time sale was a bona fide

commercial transaction.  *Id.* at 50,953-54.  In defending the relatively high price of its sale, Hejia

argued that prices for single-clove garlic are significantly higher than those for multi-clove

garlic.  *See Redetermination* at 11; *Issues and Decision Memorandum* at 5.  To support its

argument, Plaintiff placed on the record sales offers of single-clove garlic to Germany, Great

Britain, and Japan, all for single-clove garlic at prices significantly higher than the multi-clove

variety.  *See Redetermination* at 11.  Thus, the Department rejected the contention by Defendant-

Intervenors Fresh Garlic Producers Association, Christopher Ranch L.L.C., The Garlic

Company, Valley Garlic, and Vessey and Company, Inc. that Hejia's sale was not reflective of

future sales and determined that the agency "[did] not have a basis for concluding that [Hejia's]

price is aberrationally high for single-clove garlic in the United States." *Issues and Decision

Memorandum* at 5.

---

[4]  Differently worded, Commerce assigned each of the four Hejia-submitted offers 12.5 percent and assigned the SOO offer 50 percent in the final weighted-average.

Plaintiff subsequently filed in this court a complaint and motion pursuant to Rule 56.2 challenging Commerce's determination in the *Final Results*.  Responding to Plaintiff's motion, Commerce conceded that it did not adequately explain its surrogate value determination in the *Issues and Decision Memorandum*, and requested that the court issue a voluntary remand.  On October 25, 2010, the court granted the Department's request, thereby allowing Commerce to reevaluate the evidence on record and issue a remand determination in accordance with its reevaluation.

In the *Redetermination*, Commerce continues to rely on the same weighted-average of the five sales offers on the record to calculate normal value, but expands its reasoning as to why the four offers Hejia submitted were each given less weight.  *See generally Redetermination*. Commerce offers several reasons for concluding that the four Hejia-submitted offers are fundamentally flawed and consequently less probative of normal value than the SOO offer. Nevertheless, the Department continues to use them in its calculation of normal value because they represent "the only available surrogate value information for single-clove garlic on the record for which an explicit unit of measure was included in the sales offer."  *Redetermination* at 12.

## II.  Standard of Review

The court will not disturb a determination by Commerce unless it is "unsupported by substantial evidence on the record" or "otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence amounts to "more than a mere scintilla" and constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted); *accord Huvis Corp. v. United States*, 570 F.3d 1347, 1351 (Fed. Cir. 2009) (citation omitted).  The court reviews the entire record when resolving whether a determination is sufficiently supported, including anything that "'fairly detracts from the substantiality of the evidence.'"  *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (citation omitted).  That the court may draw a separate and inconsistent conclusion from the record is immaterial to whether Commerce properly supported its findings.  *See Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999).  Commerce must, however, thoroughly examine the record and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation & quotation marks omitted).

## III.  Discussion

### A.  The Department's Compliance with the Court's Remand Order

As an initial matter, Hejia contends that the Department exceeded the court's remand order by reaching a new result in the *Redetermination*.  Pl.'s Comments 11-12, 23-24; Pl.'s Reply 1-3.  Plaintiff interprets the *Final Results* as indicating that the agency originally found all five sales offers to be equally probative of normal value, which, if true, would be inconsistent with the conclusion in the *Redetermination* that the Hejia-submitted offers are less reliable as surrogate value data.  Pl.'s Comments 11, 19.  Plaintiff argues that the remand order did not grant the Department the leeway to reverse itself in this manner, but rather limited Commerce merely to justifying the conclusions reached in the *Final Results*.  Pl.'s Comments 12; Pl.'s

Reply 1-3.  Therefore, Plaintiff characterizes the *Redetermination* as an "impermissible *post hoc*

rationalization."  Pl.'s Comments 11, 12, 23-24.  Plaintiff's arguments lack merit.

        A *post hoc* rationalization is an impermissible justification for a determination supplied

by counsel for the Department in judicial proceedings.  *See Timken Co. v. United States*, 894

F.2d 385, 389 (1990) (citation omitted).  The prohibition on such justifications does not apply to

reasoning supplied by the agency in the determination under review.  *See Bao Zhu Chen v. Chao*,

32 CIT __, ___, 587 F. Supp. 2d 1292, 1300 (2008).  Plaintiff's reliance on *Hiep Thanh Seafood*

*Joint Stock Co. v. United States*, 34 CIT __, 752 F. Supp. 2d 1330 (2010) ("*Hiep Thanh*") for this

point is misplaced.  In that case, the court clearly addressed the impermissible nature of later-in-

time rationalizations for agency action supplied by Commerce's counsel from the Department of

Justice.  *See Hiep Thanh*, 34 CIT at __, 752 F. Supp. 2d at 1335-36 (refusing to affirm based on

counsel's justification for Commerce's determination not articulated in final results).

        Furthermore, Plaintiff misconstrues the Department's determination in the *Final Results*.

The Department did not find the fives sales offers each to be equally probative of normal value.

Instead, the Department relied on a weighted-average identical to the one Commerce uses on

remand, assigning each of the offers Hejia submitted 12.5 percent and the SOO offer 50 percent.

*Compare Redetermination* at 8 ("[T]he Department is continuing to calculate a surrogate value

for single-clove garlic using a simple average of the [Free on Board ("FOB")] sales offer from

SOO and the average of the four FOB sales offers submitted by Hejia."), *with Issues and*

*Decision Memorandum* at 19 ("[W]e are using a simple average of the sales offer from SOO and

a simple average of the sales offer information submitted by Hejia . . . .").  The *Issues and*

*Decision Memorandum* demonstrates the Department's original decision to treat the four Hejia

sales offers as a single source of information.  *See Issues and Decision Memorandum* at 19

("[An] average of sales offer information from these *two* sources better reflects a broader, more

reliable price experience than would simply relying solely on one or the other option." (emphasis

added)).  The *Redetermination* is not a reversal of the *Final Results*, but merely augments the

agency's justification for its methodology.

　　　　Plaintiff similarly misinterprets the court's order.  In granting the Department's request

for voluntary remand, the court instructed Commerce to "reevaluate the evidence in the record

and issue a remand redetermination, consistent with its reevaluation, that fully explains the basis

for Commerce's conclusions . . . ."  *Jinxiang Hejia Co. v. United States*, No. 09-00471 (Oct. 25,

2010) (ordering remand and denying Rule 56.2 motion).  Nothing in the plain language of the

order restricts Commerce as to the methodology it uses or the conclusions it reaches.  Moreover,

the Court and the Federal Circuit disfavor such restrictions, *see Shakeproof Assembly*

*Components Div. of Ill. Tool Works, Inc. v. United States*, 29 CIT 1516, 1526, 412 F. Supp. 2d

1330, 1339 (2005); *see also U.S. Steel Corp. v. United States*, Slip Op. 10-104, 2010 WL

3564705, at *3 n.9 (CIT Sept. 13, 2010) ("The Court generally affords the Department

reasonable discretion to establish the breadth of its review of a particular issue on remand so that

the agency may reach the most accurate results." (citing *Am. Silicon Techs. v. United States*, 334

F.3d 1033, 1038-39 (Fed. Cir. 2003)), and the court will not interpret the order as having limited

Commerce's ability to reach an accurate determination on remand.  The scope of the

*Redetermination* is consistent with the court's remand order.

### B.  Calculation of Normal Value for Nonmarket Economies

Plaintiff next challenges the Department's methodology for determining the normal value of Hejia's merchandise.  To determine the dumping margin, Commerce subtracts the export price of the subject merchandise from its normal value.  *See* 19 U.S.C. § 1677(35)(A).  The agency then divides the dumping margin by the company's export price to reach the weighted-average dumping margin.  *See* § 1677(35)(B).  For goods exported from a nonmarket economy country, such as China, section 1677b(c) instructs Commerce to find normal value by calculating the factors of production of the subject merchandise based on the "best available information." 19 U.S.C. § 1677b(c)(1).  If the Department finds that data regarding factors of production are inadequate, it must derive normal value from the price of "comparable . . . subject merchandise . . . produced in one or more market economy countries that are at a level of economic development comparable to that of the non-market economy country."  § 1677b(c)(2). The Department prefers to rely on "data based on a broad range of actual transactions that are representative of commercial prices in the surrogate country over price quotes and sales offers." *Redetermination* at 13, 28; *see Bristol Metals L.P. v. United States*, 34 CIT __, ___, 703 F. Supp. 2d 1370, 1374 (2010).  "However, where broad-based, public price data based on actual transactions are not available, as in this case, the Department may have no choice but to rely on sales offers, price quotes, price lists or other information."  *Redetermination* at 13, 28; *accord Vinh Quang Fisheries Corp. v. United States*, 33 CIT __, ___, 637 F. Supp. 2d 1352, 1358 (2009) ("When there are no better alternatives, . . . Commerce may use price quotes.").  Neither Plaintiff nor Defendant-Intervenors contest Commerce's reliance on sales offers from India to determine normal value.

### 1. The Department's Conversion of the SOO Offer

As noted, the SOO sales offer that Commerce placed on the record did not contain a price per weight. Prior to its inclusion in the dumping margin equation, therefore, this shortcoming forced Commerce to convert the offer terms to a price per kilogram so as to serve as surrogate value. The Department's conversion consisted of three steps. First, the Department assumed that the unspecified unit of sale for the offer was one clove of garlic, though this assumption goes unmentioned in the *Redetermination*. Def.'s Br. 12-13. Second, Commerce estimated that one kilogram of single-clove garlic contains 28 cloves by counting the number of cloves visible in a picture of a one-quarter kilogram container of single-clove garlic. *Redetermination* at 25 n.10. Third, and finally, Commerce concluded that SOO was a manufacturer and exporter of garlic, and not, as it had originally determined, a trading company. *Redetermination* at 31-32. The Department thereafter multiplied 28 cloves by a price of 20 cents per clove, discounted the price so as to be contemporaneous with the period of review, and concluded that it would not deduct profit, overhead, and general and administrative expenses from the price.

Plaintiff argues that Commerce's assumption that the SOO offer was for 20 cents per clove is based on speculation and mere "intuitive appeal." Pl.'s Comments 7-8, Pl.'s Reply 9-11. "Commerce cannot base its analysis on mere speculation, but may draw reasonable inferences from the record." *Lifestyle Enter., Inc. v. United States*, __ CIT __, ___, 768 F. Supp. 2d 1286, 1309 (2011) (citing *Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 CIT 1185, 1203 (2004) (not reported in F. Supp.)). In this case, Commerce's assumption was reasonable in light of the record as a whole. The *Redetermination* clearly demonstrates that 20 cents is significantly lower than the per-kilogram price of any other sales offers on record, *see*

*Redetermination* at 11 (enumerating prices per kilogram for single-clove garlic), and, in the complete absence of contradictory evidence, Commerce reasonably inferred from the plain language of the offer that the price was for a single garlic clove.  Moreover, Plaintiff does not point to any record evidence that the price in the SOO offer appertains to a quantity other than a single garlic clove.

Plaintiff also argues that Commerce failed to offer any explanation for its assumption regarding the unit of sale in the SOO offer.  Pl.'s Comments 7.  Though, as Plaintiff correctly notes, the *Redetermination* contains no mention of Commerce's inference, this lapse is not fatal. "Where an agency has not made a particular determination explicitly, the agency's ruling nonetheless may be sustained as long as 'the path of the agency may be reasonably discerned.'" *Nucor Corp. v. United States*, 414 F.3d 1331, 1339 (Fed. Cir. 2005) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 113, 1139 (Fed. Cir. 1987)).  Commerce's reasoning is readily apparent from its discussion of the conversion of the SOO sales offer terms, which clearly describes the agency's process of converting the offer terms by estimating the number of garlic cloves per kilogram.  *See Redetermination* at 24-25, 25 n.10.  Commerce's determination on this issue is reasonable and therefore supported by substantial evidence.

The Department's process of counting the number of cloves to determine a price per kilogram is also reasonable given the record as a whole.  Plaintiff briefly challenges this methodology as "not persuasive," though devotes scant attention to the issue.  Pl.'s Comments 8. The court finds that Commerce's estimate was based on substantial evidence in as much as the agency relied on a picture placed on the record by Hejia to count the number of cloves per kilogram.  *Redetermination* at 25 n.10.  While its methodology may not be exact, Commerce

mitigated this imperfection by excluding from its count any cloves not visible in the picture (i.e.,

those obscured from view by other cloves), the inclusion of which would have raised the

ultimate price of the SOO garlic by 20 cents per clove. *Redetermination* at 25 n.10. In addition,

Commerce confirmed that its count was conservative by comparing the 28-clove estimate to

information obtained during verification that 51 cloves of Hejia's singe-clove garlic constitute a

kilogram. *Redetermination* at 25 n.10. More to the point, that Commerce's method of

calculating a particular piece of surrogate value data may not yield a precise calculation does not

render its determination unsupported by substantial evidence. *See Ass'n of Am. Sch. Paper

Suppliers v. United States*, 34 CIT __, ____, 716 F. Supp. 2d 1329, 1334 (2010) (citation

omitted).[5]

  Finally, Plaintiff argues that Commerce erred in concluding that SOO was a manufacturer

of garlic and, therefore, that it was unreasonable to deduct profit, overhead, and general and

administrative expenses from the SOO offer price. Commerce determined that "SOO was an

[International Organization for Standardization ("ISO")] certified manufacturer and exporter of

garlic products" based on representations the company made on its website. *Redetermination* at

31; *see also Redetermination* at 3 ("The SOO website, in at least three instances, identifies [the

company] as a 'manufacturer.'" (citation omitted)). Plaintiff counters that SOO does not

---

[5] Plaintiff further argues that the weight of single-clove garlic varies such that, without knowing the precise weight of the SOO garlic, Commerce cannot accurately convert the per-clove terms of the SOO offer to a price per kilogram. Pl.'s Comments 3. The record evidence, however, belies Plaintiff's suggestion that the size of single-clove garlic generally varies significantly. J.A. Conf. Tab 11. In addition, as noted *supra*, Commerce's methodology for determining surrogate value need not be precise. *See Ass'n of Am. School Paper Suppliers*, 34 CIT at ___, 716 F. Supp. 2d at 1334 (process of determining surrogate value "difficult and necessarily imprecise" (citation omitted)).

explicitly state it is a producer of garlic, but rather simply notes it is a producer of various

products.  Pl.'s Reply at 15.  In reviewing Commerce's determinations, the court asks whether

the determination is "supported by a reasonable reading of the record evidence as a whole."

*Dorbest Ltd. v. United States*, __ CIT ___, ___, 755 F. Supp. 2d 1291, 1303 (2011).  That the

record conceivably could have supported a different conclusion is not sufficient to render the

Department's determination unsupported by substantial evidence.  *See, e.g.*, *Cleo Inc. v. United

States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).  In this case, Commerce

reasonably relied on representations SOO made on its website regarding the level of trade at

which it operates after the company did not respond to Commerce's request for additional

information.

### 2.  The Department's Weighted-Average Methodology

Plaintiff also contends that Commerce failed to support with substantial evidence the

differing weights it assigned the sales offers.  Pl.'s Comments 6-21.  In calculating a normal

value based on the sales offers on record, the Department averaged the four offers Hejia

submitted at a weight of 12.5 percent each with the SOO offer at a weight of 50 percent.  On

remand, Commerce explains its methodology primarily by enumerating a series of purported

flaws in Hejia's data and highlighting the Department's broad discretion in this process.  *See

Redetermination* at 8-15, 19-25.

Much of the Department's critique of the evidentiary value of Hejia's submissions rests

on the argument that the four sales offers were posted only after Commerce issued the

*Preliminary Results*.[6]  *See Redetermination* at 9, 14-15, 20-21, 29.  Plaintiff challenges this

reasoning by noting that the Department fails to provide any explanation as to why this particular

difference in timing would render the four offers less reflective of the normal value of single-

clove garlic.  Pl.'s Comments 9.  Because an "agency must explain its action with sufficient

clarity to permit 'effective judicial review,'" *see Timken U.S. Corp. v. United States*, 421 F.3d

1350, 1355 (Fed. Cir. 2005) (citation omitted), Commerce's rationale is insufficient to justify

assigning the four offers less weight.  At no point in the *Redetermination* does Commerce offer

any semblance of explanation or authority to support its conclusory claim that sales offers posted

after issuance of the *Preliminary Results* are *per se* less valuable as data.  Defendant-Intervenors

attempt to fill this gap in logic by suggesting that sales offers that are publically available prior

to issuance of the *Preliminary Results* are more reliable because they, "by definition, could not

have been prepared and posted in response to the <u>Preliminary Results</u> . . . ."  Def.-Intervenors'

Br. 7.  The court rejects this argument.  There is no evidence in the record that suggests the four

sales offers Hejia submitted were influenced by the ongoing administrative review.  Moreover,

there is no dispute that Hejia complied with applicable statutory and regulatory restrictions in

submitting its data.

--------

[6]  The parties disagree as to when three of the four offers were made.  In the
*Redetermination*, Commerce concludes that all four offers were posted subsequent to issuance of
the *Preliminary Results*, *Redetermination* at 14, though elsewhere suggests that record evidence
"support[s] a finding that at least three of the four [Hejia-submitted] quotes were posted on the
website after the <u>Preliminary Results</u>," *Redetermination* at 29.  Hejia argues that two of the four
offers were placed on the record before issuance of the *Preliminary Results*, Pl.'s Comments 9,
though fails to cite any record evidence in support of its contention.  As Commerce does not
justify the probative nature of the timing of the four sales offers in any case, this issue does not
impact the court's holding.

In the *Redetermination* and in its pleadings, Commerce suggests that the Hejia

submissions were less probative of normal value because they were not contemporaneous with

the period of review.  *See Redetermination* at 9-10; Def.'s Br. 15.  In addition, Commerce notes

that, in weighing the probative value of the four offers, it "was mindful of the fact that these

were not actual transaction prices for the single-clove garlic bulb input . . . ."  *Redetermination* at

13; Def.'s Br. 6 ("Significantly, Commerce found that the four Hejia sales offers were not for

actual completed transactions . . . ."), 16 ("Certainly, given Commerce's legitimate concerns

concerning price quotes, Commerce was reasonable in treating [the four offers Hejia submitted]

with caution.").  As Plaintiff highlights, however, the SOO offer itself was neither

contemporaneous with the period of review nor representative of a price in a completed

transaction.  Pl.'s Comments 7; Pl.'s Reply 12.  While Commerce generally may look to these

factors to determine the probative weight of surrogate value data, such arbitrary distinctions

cannot serve here to differentiate the Hejia submissions from the SOO offer.

Hejia challenges as equally unsupported Commerce's contention that the four sales offers

are of lesser evidentiary weight because they were placed on the record by an interested party,

while the SOO offer warrants a greater percentage in the averaging because Commerce found it.

Pl.'s Comments 8-9, 13.  Plaintiff is correct that Commerce fails to support this finding.  In the

*Redetermination*, Commerce summarily finds that the offers are less probative because an

interested party submitted them and argues that the agency was reasonably concerned that Hejia

could have "selected for submission surrogate values that were favorable to it, but were not

reflective of the full spectrum of values or the extent to which transactions actually occur at

those values in the market."  *Redetermination* at 12-13.  In supporting its justification,

Commerce fails to point to any evidence in the record to suggest that Hejia in fact submitted

only those price quotes that were favorable to it.  To the contrary, the Department elsewhere

suggests there is a limited body of data from which Hejia could have so chosen.  *See*

*Redetermination* at 20 ("Despite extensive research during the administrative review . . .

[Commerce] [was] able to find only limited surrogate value information for single-clove

garlic."), 21 ("Despite an extensive search prior to the <u>Preliminary Results</u>, the Department did

not find the four sales offers submitted by Hejia; the Department only found the SOO sales

offer.").  The court will not sustain explanations for agency determinations that are not

"anchored by substantial evidence in the administrative record."  *See Taian Ziyan Food Co. v.*

*United States*, Slip Op. 11-88, 2011 WL 3024720, at *28 (CIT July 22, 2011).  In the absence of

record support, this justification cannot support Commerce's finding that the four Hejia

submissions are less probative of normal value.

Most persuasive in Commerce's reasoning is the comparison the agency makes between

the four Hejia-submitted sales offers and other price quotes for single- and multi-clove garlic on

record.  Specifically, Commerce notes that the price quotes for the Hejia submissions are

noticeably lower than prices on record for single-clove garlic sold in Great Britain, Germany,

and Japan.  *Redetermination* at 11.  In addition, Commerce contrasts the low prices of the four

offers with Hejia's contention, raised while proving the bona fide nature of its sale, that single-

clove garlic "is a specialty product that commands a higher price than multi-clove garlic."[7]

*Redetermination* at 11.  Commerce then notes that the four single-clove garlic price quotes Hejia

---

[7]  Notably, Hejia maintained in a questionnaire response to the Department that the Chinese purchasing price of single-clove garlic is two to three times higher than that of the regular, multi-clove variety.  *Redetermination* at 22 n.8.

submitted are below the surrogate value the Department calculated for Super A multi-clove

garlic for the other targets of the new shipper reviews. *Redetermination* at 11 (contrasting

highest priced Hejia-submitted offer, at $1.20 per kilogram, with lowest end of price range for

multi-clove garlic, at $1.28 per kilogram).

Plaintiff argues that Commerce is making "apples-to-oranges" comparisons. Pl.'s

Comments 10-12. First, Plaintiff avers that a comparison of the Hejia submissions with other

single-clove garlic prices on record is hollow as the market forces and conditions of supply and

demand in Great Britain, Germany, and Japan are significantly different from those in India or

China. Pl.'s Comments 10. Commerce does not address this valid contention in the

*Redetermination*, and the court questions how prices from these markets can serve as probative

contrasts. Should Commerce continue to rely upon this rationale on remand, it must justify the

comparison of Hejia's price with prices that are subject to such disparate market forces.

Plaintiff further argues that Commerce cannot rationally compare prices for single-clove

garlic with the surrogate value price on record for multi-clove garlic. Pl.'s Comments 12. As

support, Hejia states that it did not contend in the underlying review that Indian single-clove

garlic demands a higher price as compared to Indian multi-clove garlic, but rather that this price

differential applies only to garlic from China. Pl.'s Comments 12. Additionally, Plaintiff argues

that a comparison between prices for these varieties of Indian garlic is untenable because of the

varying amounts of garlic offered for sale. Pl.'s Comments 12, 18. Plaintiff notes that the four

sales offers for Himalayan pearl garlic that Hejia submitted are for a minimum order of one

metric ton, J.A. Tab 4, while Commerce purportedly determined the Super A multi-clove garlic

surrogate value for 40 kilogram bags "sold in the local market in New Delhi to grocery stores

and restaurants . . . ."  Pl.'s Comments 12.  Plaintiff then speculates that the price for the four

offers is necessarily lower than that for the multi-clove garlic due to the higher quantity of sale.

Pl.'s Comments 12.

"Commerce has broad discretion to determine which criteria it will use to sort and

prioritize the data it uses in making its determination," so long as its decisions are "reasonable

and consistently applied."  *Shandong Rongzin Imp. & Exp. Co. v. United States*, __ CIT __, ___,

774 F. Supp. 2d 1307, 1315 (2011).  As noted, Commerce chose India as an appropriate

surrogate country, a decision not contested here.  Commerce reasonably assumed that the price

differential Hejia noted in the review between Chinese single- and multi-clove garlic applied

equally to similar garlic varieties in India.  The court cannot, however, evaluate Plaintiff's

argument that the varying amounts of garlic for sale invalidates the Department's comparison

because the particular document Plaintiff cites for support is not before the court.  Pl.'s

Comments 12.  It remains an open question whether evidence of a lower quantity of sale for the

Super Grade A multi-clove garlic price would render Commerce's reasoning unsupported by

substantial evidence.  Nevertheless, the court is more concerned at this stage with the

Department's failure to support the particular weighted-average it uses and will address the

quantity of sale issue on remand if necessary.

Regardless of the varying justifications regarding the probative value of Hejia's

submissions, the Department has failed to rationally connect its weighted-average methodology

to the evidence on record.  The court is mindful that section 1677b does not limit Commerce to a

single method of arriving at surrogate value and affords the agency a great deal of discretion in

this matter.  *See Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1256 (Fed. Cir.

2009) (noting "wide discretion" § 1677b(c) grants Commerce); *Lasko Metal Prods., Inc. v.*

*United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994). This discretion does not, however, absolve

Commerce of its duty to determine dumping margins "'as accurately as possible,'" *Shakeproof*

*Assembly Components, Div. Of Illinois Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382

(Fed. Cir. 2001) (quoting *Lasko Metal Prods., Inc.*, 43 F.3d at 1446), and to calculate a surrogate

value that is "as representative of the situation in the [nonmarket economy] country as is

feasible . . . ," *Nat'l Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999)

(citation & quotation marks omitted). In so doing, Commerce must rationally connect the

weighted-average it uses with the record evidence regarding the normal value of single-clove

garlic. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43; *accord Dorbest Ltd.*, __

CIT at ___, 755 F. Supp. 2d at 1296 ("At a minimum, in making its data choices, [Commerce]

must explain the standards it applied and make a rational connection between the standards and

the conclusion."). "A rational connection is a connection that is supported by justification or

evidence." *Dorbest Ltd.*, __ CIT at ___, 755 F. Supp. 2d at 1296. In the *Redetermination*,

Commerce fails to connect its reasoning regarding the probative nature of the four sales to the

decision to assign them, collectively, 50 percent of the weighted-average. Nothing inherent in

the justifications discussed above would warrant treating the four offers as one quarter as

probative as the SOO offer. The court cannot sustain such an unsupported methodology.

     The Department avers that assigning the four Hejia submissions the weight of a single

offer in the averaging is consistent with its finding that the four offers represent a "single price

point" in the market. *Redetermination* at 14, 21. As support for this finding, Commerce notes

that the four offers were posted close in time to one another and are nearly identical in price, and

that two of the four garlic suppliers ship from the same port in India.  *Redetermination* at 14, 21.

This reasoning again presents a leap in logic.  While the sales offers are contemporaneous and

close in price, the agency fails to provide a satisfactory explanation as to why these qualities

justify treating the offers as a "single price point," and instead leaves it to the court to assume

that they do.  Commerce must provide some grounds – such as a factual basis, reference to

agency precedent, or an elucidation of the "single price point" theory – from which the court can

review its determination for substantial evidence.

      Finally, Plaintiff contests the Department's rationale that "affording each of the four

offers equal weight would encourage parties to submit endless sales offers and price quotes with

a view to tilt the surrogate value calculation in their favor."  *Redetermination* at 15.  As noted

above, the Department does not point to any evidence on the record that suggests Hejia engaged

in such purposeful distortion in this case.  Instead, in the instant review, the Department

extended the period within which interested parties could submit surrogate value data.  *Final

Results* at 50,952.  This belies the notion that Commerce was concerned about an excess of

submissions in this review.  Although Commerce may wish to limit the data interested parties

submit to the agency so as not to overwhelm its resources or skew its determinations, it has other

tools at its disposal for limiting such submissions, including specifying the time within which the

parties must submit data.  *See* 19 C.F.R. § 351.301(c).  This general concern, while valid, does

not excuse Commerce from its duty to connect its methodology to substantial evidence.[8]

---

[8]  Plaintiff argues that the Department departs from its own set practice of using broad,
country-wide data to determine surrogate value when it fails to give the four sales offers equal
weight.  Pl.'s Comments 19-20.  As Commerce notes, Plaintiff mistakenly conflates a few sales
offers "with published countrywide price data which represent broad market averages."
*Redetermination* at 28.  There is no basis to conclude that Hejia's submissions constitute the

In Hejia's new shipper review, Commerce was faced with two sets of imperfect data: the

SOO offer that lacked a unit of measure and the Hejia-submitted offers that were notably low

priced.  The "process of constructing foreign market value for a producer in a nonmarket

economy is difficult and necessarily imprecise," *Longkou Haimeng Mach. Co. v. United States*,

33 CIT __, ___, 617 F. Supp. 2d 1363, 1372 (2009) (quoting *Nat'l Ford Chem. Co.*, 166 F.3d at

1377), and Commerce will often face a record replete with imperfect data, *see Jinan Yipin Corp.*

*v. United States*, 33 CIT __, ___, 637 F. Supp. 2d 1183, 1196 (2009).  However, "[e]ven in

situations where all potential sources of data on the record have flaws (a not uncommon

occurrence), the law requires Commerce to make a reasoned decision as to the source on which it

chooses to rely, and to both adequately explain its rationale and support its decision by reference

 to substantial evidence in the record."  *Taian Ziyang Food Co.*, 2011 WL 3024720, at *25

(footnote omitted).  Such a reasoned basis and rational connection are not present in the

*Redetermination*.

---

brand of data on which Commerce prefers to rely, namely "a broad range of actual transactions
that are representative of commercial prices in the surrogate country."  *Redetermination* at 28.
Similarly, Plaintiff is mistaken when it argues that Commerce used a finished product price as an
input to determine normal value.  Pl.'s Comments 21-23.  As Defendant notes, "the SOO offer
price that was combined with the Hejia-submitted information[] was not used as an *input* price.
Rather, the SOO offer price and Hejia-submitted offer information were used as the surrogate
values for Hejia's *finished* garlic price."  Def.'s Br. 20 (citing *Redetermination* at 32).

### IV.  Conclusion

For the foregoing reasons, it is

ORDERED that the Department's *Redetermination* is SUSTAINED IN PART and REMANDED IN PART.  More specifically, it is

ORDERED that the Department's conversion of the terms of the SOO sales offer that it placed on the record to a price per kilogram is SUSTAINED; it is further

ORDERED that the Department's weighted-average methodology to determine surrogate value for single-clove garlic is REMANDED for further consideration in accordance with this opinion; it is further

ORDERED that Defendant shall file its second remand results by October 24, 2011; and it is further

ORDERED that Plaintiff and Defendant-Intervenor shall file their comments by November 23, 2011.


Dated: <u>September 7, 2011</u>                          <u> /s/ Judith M. Barzilay</u>
            New York, NY                                      Judith M. Barzilay, Senior Judge